# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| JILLIA MOJICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:23-cv-00334-RK |
| | ) |
| SPINNAKER INSURANCE COMPANY, | ) |
| HIPPO ANALYTICS INC., | ) |
| | ) |
| Defendants. | ) |

## **ORDER**

Before the Court are the parties' cross-motions to enforce a settlement agreement. (Docs. 60, 62.) The motions are fully briefed. (Docs. 61, 63, 65, 66.) After careful consideration and review, and for the reasons explained below, the Court **ORDERS** that (1) Defendants' motion to enforce, (Doc. 60), is **DENIED**; and (2) Plaintiff's motion to enforce, (Doc. 62), is **GRANTED**.

### Background

Plaintiff Jillia Mojica brought this insurance breach-of-contract and vexatious-refusal-to-pay lawsuit against Defendants Spinnaker Insurance Company and Hippo Analytics Inc. in the Circuit Court of Jackson County, Missouri, on April 12, 2023. (Doc. 1-1 at 2-6.) Plaintiff alleged that Defendants breached the homeowners insurance policy by failing to provide coverage under the policy for water damage caused when water pipes ruptured due to extreme overnight cold temperatures (-6 degrees Fahrenheit) in December 2022. (*See generally id.*) Defendants removed the case to federal court, asserting the Court's diversity-of-citizenship jurisdiction. (Doc. 1.)

On or about November 4, 2025, the parties reached a settlement agreement in principle. (*See* Doc. 63-1 (counsel e-mails).) The parties agreed to a settlement payment of $60,000 "for a full release/settlement agreement." (*Id.*) After several follow-up emails by plaintiff's counsel over the following month, (Doc. 63-2, 63-4, 63-5), defense counsel provided an incomplete draft release and settlement agreement on December 3, 2025. (*See* Doc. 63-6.) Plaintiff executed and returned the final Settlement Agreement and Release on December 16, 2025, two days after receiving the final document from defense counsel, and requested that the settlement check be forward to counsel "ASAP." (Doc. 63-7.) Two days later, on December 18, 2025, defense counsel e-mailed plaintiff's counsel: "We are showing that the property has a mortgage. Can you confirm if it still

does? If so, they will need to be on the check." (Doc. 63-8.) Plaintiff declined to provide current mortgagee information to Defendants; Defendants have not yet tendered the settlement check.

## Discussion

The crux of this settlement dispute is whether the settlement check from Defendants must include and identify any current mortgagee as an additional payee. Defendants assert that they are required to include any current mortgagee as an additional payee, in addition to Plaintiff and plaintiff's counsel, under a provision within the underlying homeowners insurance policy. They assert that under the terms of the policy, they are required to identify any relevant mortgagee "on any payment issued to Plaintiff," (Doc. 61 at 2), citing the following policy provision:

> 1. If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

(Doc. 61-2 at 55.) Defendants assert that because the homeowners insurance policy names a mortgagee, Defendants cannot send the settlement check directly to Plaintiff without the current mortgagee information, which Plaintiff has declined to provide. Accordingly, Defendants seek an order that Plaintiff "accept payment of the settlement in compliance with the terms of her policy of insurance, [and] to cooperate with Defendants by furnishing information concerning her [current] mortgagee . . . ." (Doc. 61 at 6.)

Plaintiff, on the other hand, argues that the parties' Settlement Agreement and Release does not require that Plaintiff's mortgage company be included as a payee on the settlement check. She asserts that the homeowners insurance policy provision relied on by Defendants does not apply in the context of the parties' settlement of this lawsuit, particularly where Defendants "have consistently and emphatically denied that there is *any* coverage under this policy for Plaintiff's loss at *all*." (Doc. 63 at 4.) Plaintiff asks the Court to enforce the parties' settlement agreement by "requiring Defendants to issue payment of the $60,000.00 agreed to by Defendants payable to Plaintiff and her attorney . . . ." (*Id.* at 7.)

As both parties acknowledge, "[b]asic principles of contract formation govern the existence and enforcement of [an] alleged settlement [agreement]." *Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1221 (8th Cir. 2006). Defendants focus exclusively on the homeowners insurance policy as the operative contract. Even assuming the insurance policy is controlling or applicable in the context of the parties' settlement of this litigation, Defendants' argument is not well

2

supported under the plain terms of the policy provision cited by Defendants. That policy provision, by its plain terms, applies to "any loss payable under Coverage A or B." Here, as Plaintiff correctly observes, the parties' Settlement Agreement and Release specifically and unambiguously states: "It is understood that payment hereunder is not to be construed as any admission of liability and that Defendants expressly deny all liability." (Doc. 61-1 at 1.) Defendants do not provide any support for the proposition that the settlement of this lawsuit constitutes a "loss payable under Coverage A or B" under the plain terms of the homeowners insurance policy, particularly where Defendants continue to deny coverage under the policy.

*Parmalee v. Standard Fire Insurance Co.*, 697 F. Supp. 2d 1069 (E.D. Mo. 2010), cited by Defendants, is therefore inapposite. That case involved an insurer's settlement for loss payments under the applicable insurance policy (not settlement of a subsequent lawsuit), and thus directly involved the interpretation and application of the applicable policy language. *See generally id.* at 1072-73. Similarly, as Plaintiff persuasively argues, the litigation-settlement payment involved in *Samuels v. State Farm Fire & Cas. Co.*, No. 23-1072, 2025 WL 1479102 (E.D. La. Apr. 22, 2025), the only other case cited by Defendants, appears to have involved the insurer's agreement to pay a certain amount *under the applicable insurance policy* in settlement of the subsequent lawsuit. *See id.* at *1 (noting the estimate that Samuels had relied on "as proof of loss under Coverage A" of the applicable homeowners insurance policy during the lawsuit settlement negotiations and that the ultimate settlement amount for the lawsuit was less than the Coverage A policy limits).[1]

The parties' settlement here appears to be a settlement of this litigation and not a settlement "under" Plaintiff's homeowners insurance policy. In addition to Defendants' clear and unambiguous disclaimer of "all liability," even more enlightening is that the parties' settlement negotiation and final agreement contemplated and includes that:

---

[1] Moreover, *Samuels* is additionally distinguishable because the plaintiff in that case asked the district court to enforce the parties' settlement by splitting the lump sum settlement amount into two checks, which the district court denied, reasoning: "where the parties did not agree on any allocation of funds between the coverages under the Policy or between contractual and extra-contractual damages, there is no basis for the Court to do so by ordering the issuance of separate checks . . . ." 2025 WL 1479102, at *2. The question here is different—whether Defendants are *required* (whether by law or as a matter of contract) to issue a settlement check that includes any mortgagee as an additional payee. Defendants have not provided any legal authority in support of their motion to enforce settlement in that specific regard, other than pointing to the cited policy language.

3

(1) Plaintiff would be solely responsible for resolving a secondary lawsuit filed by Power Dry, Inc. (which appears to be a water-remediation company that provided services at Plaintiff's home following the December 2022 water leak) against Plaintiff in the Circuit Court of Jackson County, Missouri, in which Plaintiff filed a third-party indemnification and contribution petition against Defendants; and

(2) that the settlement amount paid by Defendants would be held in trust and not disbursed to Plaintiff until that other lawsuit was resolved. (Doc. 63-1 (defense counsel's e-mail); Doc. 61-1 at 5 (final settlement agreement language).)

In other words, the settlement agreement reached here did not contemplate and did not effectuate any payment by Defendants under or pursuant to the homeowners insurance policy (and in fact Defendants expressly deny liability—i.e., coverage) but was instead a settlement of this litigation and Defendants' potential liability in the corresponding *Power Dry* action in state court in a manner including that the *Power Dry* litigation would be favorably resolved by some portion of the settlement proceeds tendered in this action.

Defendants argue that the Settlement Agreement and Release did not "alter[], allocate[], or supersed[e] the policy-mandated rights of the mortgagee or the insurer's corresponding payment obligations." (Doc. 65 at 3.) However, neither did the Settlement Agreement and Release—which is the operative contract at issue—somehow incorporate the insurer's payment obligations under the homeowners insurance policy, particularly where Defendants disclaim and deny all liability (i.e., coverage) under the insurance policy (making this case distinguishable from *Parmalee* and *Samuels*). Plaintiff has the better argument under the plain and clear language of the Settlement Agreement and Release. The Court agrees with Plaintiff that the issue raised by Defendants and defense counsel in finalizing or perfecting the settlement appears to be "just a further example of the difficulties and delays that Defendants have placed throughout this litigation." (Doc. 66 at 2.)[2]

---

[2] The Court held multiple discovery dispute conferences and status conferences throughout the pendency of this action, largely necessitated by Defendants' and defense counsel's inability to efficiently and effectively address Plaintiff's discovery requests, including the scheduling of a corporate representative deposition and the designation of expert witnesses, among other issues. Defendants' delay in perfecting the settlement, including requiring motions practice on the issue, is unfortunately unsurprising given this procedural history. The Court expects that Defendants and defense counsel will promptly comply in full with the Court's Order enforcing the parties' settlement agreement as set out above.

**Conclusion**

The Court accordingly **ORDERS** that (1) Defendants' motion to enforce, (Doc. 60), is **DENIED**; and (2) Plaintiff's motion to enforce, (Doc. 62), is **GRANTED**. The Court **FURTHER ORDERS** that Defendants issue the required settlement check in the amount of $60,000.00 to Plaintiff and plaintiff's counsel.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: February 18, 2026